**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated: September 24 2014**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 13-33367 |
| | ) | |
| Justin F. Bage, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION REGARDING MOTION TO DISMISS

This case is before the court on the Amended Motion of the United States Trustee ("the UST") to Dismiss pursuant to 11 U.S.C. § 707(a) ("Motion") [Doc. # 22] and Debtor's Amended Response [Doc. # 43]. The UST seeks dismissal of this case for cause, asserting that Debtor filed the case in bad faith. The court held a hearing on the Motion that Debtor, his counsel and counsel for the UST attended in person and at which the parties presented testimony and other evidence in support of their respective positions.

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that this court may hear and decide. 28 U.S.C. § 157(b)(1), (b)(2)(O).

This memorandum of decision constitutes the court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, made applicable to this contested matter by Fed. R. Bankr. P. 9014(c) and

7052. Regardless of whether specifically referred to in this Memorandum of Decision, the court has examined the briefs and arguments of counsel, weighed the credibility of the witnesses, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons discussed below, the court will deny the Motion.

## **FACTUAL BACKGROUND**

Debtor is a high school graduate and is 33 years old. He was employed as a paramedic by Medcorp, Inc. ("Medcorp"), which was owned and operated by his parents, from 1999 until 2010 when the business was put into a state court receivership at the request of the Huntington National Bank ("Huntington") for the purpose of enforcing a judgment. Prior to the appointment of a receiver, Debtor had already experienced a reduction in his pay by Medcorp. In 2011, he was hired as a paramedic by Medcorp's successor, where he worked until his employment was terminated in November 2013.

In 2011 and 2012, Debtor was able to supplement his otherwise reduced income through his deployment with the National Strategic Ambulance Response Team after Hurricane Irene and Hurricane Sandy occurred. In addition, his girlfriend moved in and shared living expenses with him.

Some time in 2012, Debtor entered into a workout agreement with Huntington with respect to his home mortgage loan. The agreement required him to make payments in an amount one and a half times his normal payment amount. In November 2012, after Debtor's girlfriend moved out and was no longer sharing expenses, he stopped making the mortgage payment. Debtor testified that he attempted to refinance but was unable to do so due to his poor credit. Debtor was also delinquent in payment of the real estates taxes on his home. Debtor testified that his monthly mortgage payment was supposed to, and he believed did, include a property tax escrow. He learned after his mortgage was transferred from Sky Financial to Huntington that none of his payment was ever escrowed.

In addition to Debtor's mortgage relationship with Huntington, Debtor also maintained bank accounts at Huntington. Debtor testified that, in August 2010, because of his "dislike" for Huntington after learning that it had caused his parents' business to be put in receivership, he terminated his banking relationship and opened new accounts at PNC Bank. He opened three accounts as part of a "package deal" that included a safety deposit box. Debtor did not actually obtain a key for the safety deposit box until February 2011, at which time he put some paperwork, a few coins and cash equal to one month's house payment in the safety deposit box. Shortly thereafter, he allowed his mother to place a bag of items in the safety deposit box, which he later learned contained some antique family jewelry.

Initially only Debtor deposited money in the PNC accounts. Later, at his parents' request, he allowed them to use one of his accounts. Although Debtor was unable to identify who made certain smaller deposits from a "Sharebuilder" account in October, November and December of 2010, Debtor does not dispute that, at least by February 2011, his parents began depositing money into one of his PNC accounts. Specifically, Debtor identified five deposits totaling slightly over $194,600 that were made by his parents between February 22, 2011, and June 8, 2011. In addition, in May 2011, Debtor's mother began having her paycheck directly deposited into Debtor's account. Debtor also permitted his parents to write checks against his account for payment of living expenses and to exercise control over the account.

In September 2011, Huntington filed a complaint for monetary and injunctive relief against Debtor and his parents in state court ("Huntington Litigation"), alleging that Debtor's parents fraudulently transferred certain of their assets to Debtor's bank accounts and that Debtor participated and conspired in the fraudulent transfers. [*See* UST Ex. 10]. Some time thereafter, all of Debtor's PNC accounts were frozen.

Debtor filed for relief under Chapter 7 of the Bankruptcy Code on August 13, 2013. [UST Ex. 2]. At that time, no judgment had been entered and the Huntington Litigation remained pending. Debtor testified that a foreclosure judgment with respect to his home mortgage was obtained before his petition was filed but that Huntington continued thereafter to send him letters in 2013 regarding restructuring his loan. Debtor credibly testified that his intent in filing his petition was to save his home and that he believed if he obtained a discharge regarding any claims in the Huntington Litigation, he could put a plan together to do so. But the termination of Debtor's employment on November 20, 2013, precluded any further attempt by him to save his home. Huntington was granted relief from stay and Debtor's home was eventually sold at a foreclosure sale.

Debtor's bankruptcy schedules show total general unsecured debt in the amount of $273,937.87, which includes $250,000.00 as unliquidated debt relating to the Huntington Litigation. [*See id.* at 22-25]. Debtor's schedules also disclose various assets, including a thirty-foot boat that was turned over to the Chapter 7 Trustee. [*See id.* at 14]. The Chapter 7 Trustee filed a notice of assets in this case, and a claims bar date of March 3, 2014, was set. [Doc. ## 24, 30]. Although Huntington filed a claim with respect to the mortgage debt, it did not file a proof of claim in this case with respect to the Huntington Litigation, nor has it filed an adversary complaint seeking nondischargeability of any debt owed to it. Neither Huntington nor any other creditor or party in interest, *see* 11 U.S.C. § 727(c)(1), objected to Debtor's discharge, *cf.* 11 U.S.C. §§ 727(a)(2), (a)(7) and 101(31)(A). The deadline to challenge the dischargeability of debts relating

to alleged fraudulent transfers and conduct as alleged in the Huntington Litigation was November 29, 2013. [*See* Doc. # 3]. The deadline to object to Debtor's discharge under § 727(a) was also November 29, 2013. [*Id.*].

## LAW AND ANALYSIS

The UST moves for dismissal of this case "for cause" under 11 U.S.C. § 707(a), which provides that "[t]he court may dismiss a case under this chapter only after notice and a hearing and only for cause. . . ." As the moving party, the burden of proving "cause " under § 707(a) is on the UST. *Simon v. Amir (In re Amir)*, 436 B.R. 1, 16 (B.A.P. 6th Cir. 2010); *Piazza v. Nueterra Healthcare Physical Therapy (In re Piazza)*, 719 F.3d 1253, 1266 (11th Cir. 2013); *In re McFadden*, 477 B.R. 686, 691 (Bankr. N.D. Ohio 2012); *In re Horan*, 304 B.R. 42, 46-47 (Bankr. D. Conn. 2004); *In re Kuhns*, No. 11-31518, 2011 WL 4713225, *2, 2011 Bankr. LEXIS 3900, *4 (Bankr. N.D. Ohio Oct. 11, 2011); *see In re Webb*, 447 B.R. 821, 827 (Bankr. N.D. Ohio 2010) (stating that the burden under 707(b)(3)(A) of showing that the debtors filed their petition in bad faith was on the UST). *Contra In re Tamecki*, 229 F.3d 205 (3d Cir. 2005)(once evidence is provided to impugn good faith, burden shifts to debtor to prove good faith).

As cause for dismissal, the UST contends that Debtor filed his petition in bad faith. The Sixth Circuit has interpreted the "for cause" provision of § 707(a) as permitting a bankruptcy court to dismiss a Chapter 7 petition if it finds that the petition was not filed in good faith. *Indus. Ins. Servs., Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1126-27 (6th Cir. 1991); *cf. Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 373 (2007) (noting that the nonexclusive list of causes justifying dismissal under § 1307(c) does not mention bad faith but recognizing that dismissal for bad-faith is implicitly authorized by the words "for cause" in that section). The Sixth Circuit recognized that "[t]he facts required to mandate dismissal based upon a lack of good faith are as varied as the number of cases." *Zick*, 931 F.2d at 1127. It cautioned, however, that dismissal "should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence." *Id.* at 1129. "A hallmark of good faith is the existence of an honest intention in filing bankruptcy." *In re Groscost*, No. 11-60502, 2011 WL 4498871, *3, 2011 Bankr. LEXIS 3701, *7 (Bankr. N.D. Ohio Sept. 27, 2011) (citing *Tamecki*, 229 F.3d 205). "The decision to dismiss under § 707(a) is an equitable determination and is within the bankruptcy court's discretion." *Simon v. Amir (In re Amir)*, 436 B.R. 1, 16 (B.A.P. 6th Cir. 2010).

In his attempt to demonstrate Debtor's lack of good faith, the UST primarily relies upon the fact that Debtor allowed his parents to deposit funds into his PNC account and to use his safety deposit box and filed his bankruptcy petition with the intent to avoid a large potential debt based upon this conduct, which constitutes the majority of his scheduled unsecured debt. Initially, the court notes that § 707 dismissals "are not intended to hammer a debtor for being a bad person. Rather, they are reserved for cases where debtors are trying to undermine the integrity of the bankruptcy system." *In re McFadden*, 477 B.R. at 693; *see McDow v. Smith*, 295 B.R. 69, 74 (E.D. Va. 2003) (explaining that "a debtor's 'bad faith' or 'lack of good faith' is evidenced by the debtor's deliberate acts or omissions that constitute a misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy Code"); *Zick*, 931 F.2d at 1127 (citing *In re Brown*, 88 B.R. 280 (Bankr. D. Hawaii 1988) (good faith is an implicit jurisdictional requirement and requires inquiry into any abuse of the provisions, the purpose [and]...spirit of the bankruptcy law and into whether the debtor requires the liberal protection of the Code)). And while it is true that the unliquidated Huntington Litigation debt of $250,000 constitutes the majority of Debtor's scheduled unsecured debt, that alone is insufficient to find cause for dismissal of this case. The Bankruptcy Code specifically provides the treatment for such a debt to the extent based upon fraudulent conduct or an intent to cause injury, which is nondischargeability, not dismissal of the debtor's bankruptcy case. *See* 11 U.S.C. § 523(a)(2), (a)(6); *see In re Quinn*, 490 B.R. 607, 617 (Bankr. D.N.M. 2012)(holding that "dismissal of a Chapter 7 case for cause may not be based exclusively or primarily on a debtor's conduct that forms the basis for objections to discharge under 11 U.S.C. § 727 or objections to dischargeability of particular debts under 11 U.S.C. § 523"); *In re Glunk*, 342 B.R. 717, 733 (Bankr. E.D. Pa. 2006) (stating that "if other provisions already imbedded in the Code are up to the task of ensuring the proper functioning of the bankruptcy system, there is no reason to invoke the narrow doctrine of dismissal for lack of good faith" and finding support for this principle in that "such dismissals have been characterized as 'extreme'"); *In re Ferry*, No. 08-12483-SSM, 2008 WL 4560672, *3-4, 2008 Bankr. LEXIS 4979, *11-12 (Bankr. E.D. Va. Oct. 8, 2008) (same); *In re Grullon*, Case No. 13-11716 (AIG), 2014 Bankr. LEXIS 2238, *7-*9 (Bankr. S.D.N.Y. May 20, 2014)("[M]ost of the Debtor's acts claimed to evidence bad faith are addressed specifically under other provisions of the Bankruptcy Code and cannot properly constitute grounds for dismissal under a vague general equitable concept such as 'bad faith'"); *cf.* 11U.S.C. § 727(a)(2)-(7). The Supreme Court has recently emphasized in applying the Bankruptcy Code that specific statutory provisions govern over general provisions, particularly where the court is urged to take action advanced as equitable. *See Law v. Siegel*,

134 S.Ct. 1188, 1194 (2014)("[A] statute's general permission to take actions of a certain type must yield to specific prohibition found elsewhere").

Nevertheless, the UST cites *In re O'Brien*, 328 B.R. 669, 674-75 (Bankr. W.D.N.Y. 2005) for the proposition that there are debtors whose prepetition conduct is such that it is appropriate that their cases be dismissed without the need for the court and bankruptcy system being required to expend the time and resources necessary to conduct, hear or determine § 523 and § 727 causes of action to bring to a conclusion the case of a bad faith filer. While that may be true, conduct that forms the basis of such causes of action may not be the exclusive or primary basis of a motion to dismiss for cause under § 707(a). In *In re Quinn*, the court explained, and this court agrees, that the fact that some of the alleged conduct asserted as grounds for dismissal would fit under § 727 or § 523 will not prevent dismissal when a combination of factors are present demonstrating a lack of good faith, "such as pre-petition fraudulent conduct in an effort to place assets beyond the reach of creditors, manipulation of debt to reduce the debtor's creditors to one, filing the petition on the heels of a judgment entered against the debtors with the intent to avoid a large single debt, and multiple, successive bankruptcy filings," *see In re Quinn*, 490 B.R. at 617-18, none of which occurred in this case.

Although the UST characterizes Debtor's intent in filing his petition as merely to discharge the Huntington Litigation debt, the UST also acknowledges that it was filed just two days before a foreclosure sale of Debtor's home was to take place. [*See* Doc. # 22, p. 8]. The court credits Debtor's testimony that his purpose in seeking a discharge was to enable him to forge a path to save his home and restructure his mortgage loan. Debtor was experiencing other financial difficulties unrelated to the Huntington Litigation. Debtor's Statement of Financial Affairs shows that three other creditors–the Lucas County, Ohio Treasurer, a doctor and a marina--held judgments against him in collection actions. [UST Ex. 2, p. 2-33]. He was delinquent in paying property taxes on his home due to the fact that funds were never put in escrow for that purpose after his mortgage was transferred to Huntington. He had experienced a decrease in his pay and, even after the Huntington Litigation was commenced, he had entered into a mortgage workout agreement with Huntington. Unable to make his mortgage payments after his girlfriend, who shared in the household expenses, moved out, and facing a foreclosure sale of his home, Debtor filed for bankruptcy protection. The Huntington Litigation had been pending in state court for nearly two years. Debtor believed that seeking bankruptcy protection and discharge of his unsecured debt, and in particular any debt associated with the Huntington Litigation, would provide him the opportunity to restructure the debt on his home.

6

While he ultimately was unable to do so due to his employment being terminated after filing his petition, Debtor's intent in filing was not for a purpose contrary to the purpose and spirit of the Bankruptcy Code. After two years of litigation, no judgment had been entered against him by the state court in the Huntington Litigation, while he had other creditors that did have judgments against him in collection actions. Ultimately Huntington did not even bother to file a proof of claim in this case based on the debt alleged in the Huntington Litigation.

There is no evidence that Debtor has concealed or misrepresented his own assets or income or that he lived or has continued a lavish lifestyle reflective of a lack of good faith in dealing with his creditors. Although the UST contends that Debtor has disguised his financial well being by inflating expenses on his schedules, this contention is based on the fact that Debtor included his home mortgage expense on Schedule J, notwithstanding the fact that he was not currently making that payment. Given Debtor's permissible purpose in filing for bankruptcy relief, that is, to get himself in a posture to restructure the mortgage debt on his home, the court does not find inclusion of the mortgage payment as an expense to be inappropriate.

For the foregoing reasons, the court does not find the circumstances of this case to be egregious, as counseled by *Zick*, or to undermine the integrity of the bankruptcy system. The court thus finds dismissal on the basis of bad faith is not warranted and will deny the UST's Motion. The court will enter a separate order in accordance with this Memorandum of Decision.

###